IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PATRICIA MONTANINO | : | |
| 28 Campbell Lane | : | |
| East Islip, NY 11730 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. _____ |
| | : | |
| v. | : | |
| | : | |
| SUFFOLK COUNTY BOARD OF | : | |
| ELECTIONS | : | |
| 700 Yaphank Avenue | : | |
| Yaphank, NY 11980 | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Patricia Montanino (*hereinafter* referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.      This action has been initiated by Plaintiff against Defendant for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000d *et. seq.*), the Americans with Disabilities Act ("ADA" - 42 U.S.C. §§ 12101 *et. seq.*) and the New York State Human Rights Law ("HRL" - N.Y. Exec. Law §290 *et seq.*).  Plaintiff asserts, *inter alia*, that she was unlawfully terminated by Defendant.  As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's

state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of New York.

5.      Plaintiff exhausted her administrative remedies (with respect to her Title VII and ADA claims) because she timely filed a Charge with the Equal Employment Opportunity Commission (EEOC) and now files the instant lawsuit within ninety (90) days of receiving a right-to-sue letter and/or notice of case closure from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the above-caption.

8.      Defendant Suffolk County Board of Elections (hereinafter "Defendant"), is a bipartisan government agency responsible for the various electoral processes in Suffolk County (including voter registration and election results), established under the laws of New York State, currently part of the New York State Board of Elections.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff is an adult female.

12.     In or about November of 2012, Plaintiff was hired and began working for Defendant as an Election Clerk.

13.     Throughout Plaintiff's employment she was a dedicated and hardworking employee who performed her job well.

14.     Beginning in or about 2013, another Election Clerk, Kevin O'Hare (*hereinafter* "Mr. O'Hare"), began subjecting Plaintiff to offensive and unwelcome sexual gestures, sexual touching, and sexual comments at work; for example:[1]

    a.  Mr. O'Hare attempted to massage Plaintiff's shoulders, which Plaintiff opposed and made it clear that such conduct was not welcomed;

    b.  Mr. O'Hare made sexually suggestive comments regarding intercourse and referred to his wife by Plaintiff's name;

    c.  Mr. O'Hare, on at least one occasion, grabbed the bottom of Plaintiff's breast;

    d.  Mr. O'Hare sometimes followed Plaintiff throughout her work day (for no discernible work-related reason), which made Plaintiff feel uncomfortable and unsafe; and

---

[1] Not intended to be an exhaustive list.

e. Mr. O'Hare sometimes sat behind Plaintiff in the break room/lunchroom and watched her (which made her uncomfortable), to the extent that Plaintiff changed her lunch and break times (to no avail, as Mr. O'Hare then watched and followed Plaintiff on her breaks even though it was different than his own break time).

15.   Plaintiff made it known to Mr. O'Hare that his sexually-harassing conduct and comments (described *supra*) were completely unwelcome, however same did not cease.

16.   From in or about 2014 through the end of her employment (described *infra*), Plaintiff complained to Defendant's management (and then the EEOC) about Mr. O'Hare's sexually harassing behavior on multiple occasions, however, Plaintiff's complaints were never properly addressed by Defendant and instead Plaintiff was met with hostility (and continued sexual harassment); for example[2]:

a. In or about Spring/Summer of 2015, Plaintiff complained internally regarding Mr. O'Hare's sexual harassment on multiple occasions to Defendant's management, including but not limited to Plaintiff's room supervisor Bill Mann ("Mr. Mann"), Mark Gallo and Deputy Commissioner Betty Manzella ("Ms. Manzella");

b. In or about August of 2015, Plaintiff contacted the EEOC regarding the ongoing sexual harassment in the workplace, which was still not properly addressed by Defendant (despite the fact that she complained internally on multiple occasions, described *supra*);

c. In or about early September of 2015, shortly after complaining to the EEOC (described *supra*), upon information and belief Defendant was notified of Plaintiff's complaint and thereafter suspended Plaintiff for two (2) days without

---

[2] Not intended to be an exhaustive list.

pay for <u>completely</u> pretextual reasons, considering:

    i.  Plaintiff had already been disciplined for the alleged misconduct; and

    ii.  As Plaintiff's Mr. Mann was giving Plaintiff a memorandum of the flagrantly fabricated 2-day suspension (issued by Mr. LaLota), Mr. Mann *specifically asked whether she had gone to the EEOC* (Plaintiff affirmed).

    d.  On or about September 29, 2015, Plaintiff submitted a written complaint to Defendant's management (addressed to Commissioner, Nick LaLota ["Mr. LaLota"] and Supervisor, Mr. Mann), wherein she again specifically complained about Mr. O'Hare's unwelcomed and inappropriate sexual gestures as well as Defendant's failure to properly address same and the retaliation Plaintiff had since been subjected to by Defendant's management (including but not limited to Supervisor, Jamie Merrill), stating in part:

    i.  "This kind of behavior is uncomfortable and unacceptable. I should be able to come to work and not feel threatened, intimidated, insulted or ashamed.  Move on and forget it, is easily said than nothing done. The harassment is becoming a weekly occurrence…"

17.    On or about January 14, 2016, in reference to Plaintiff's complaints of sexual harassment/discrimination, supervisor Mr. Mann told her to "try not to create a lawsuit," and essentially drop the issue (despite the ongoing harassment/retaliation).

18.    On or about March 4, 2016, Plaintiff complained of the *still* ongoing sexual harassment in writing, and reiterated that Plaintiff had on several occasions complained of Mr. O'Hare's "disgusting, frightening, and illegal" conduct, and yet the same continued.

19.     In or about March of 2016, Plaintiff again complained to Deputy Commissioner, Ms. Manzella, about the ongoing sexual harassment (described *supra*).

20.     Through in or about Spring of 2016, despite Plaintiff's multiple unresolved complaints (described *supra*), Defendant's management continued to not properly investigate nor address Plaintiff's complaints of sexual harassment, <u>instead subjecting Plaintiff to further sexual harassment</u>; for example, as late as in or about late March of 2016, Defendant's management (including but not limited to Jamie Merrill) attempted to send Mr. O'Hare into the same room as Plaintiff (upon information and belief, for no proper work purpose), despite knowing of Plaintiff's complaints of Mr. O'Hare's ongoing sexual harassment.

21.     On or about April 1, 2016, after Plaintiff's complaints had *<u>still</u>* not been properly investigated or resolved, Mr. Mann advised Plaintiff that Ms. Manzella said Plaintiff should either "go to the police or <u>stop complaining</u>" (in reference to Plaintiff's recent complaint of sexual harassment to Ms. Manzella, described *supra*, which Defendant was apparently **refusing** to address internally).

22.     On or about April 3, 2016, <u>as instructed</u> by Defendant's management (Mann/Manzella, described *supra*), Plaintiff filed a complaint with the Suffolk County Police Department regarding the workplace sexual harassment; the corresponding Police report states in part:

> a. "[Plaintiff] states having on-going problems with suspect at work. [Plaintiff]] states suspect follows her around work and stares at her.  [Plaintiff] states he says inappropriate things to her, he has told her he has wanted to f*** her and has made inappropriate kissing gestures to her.   <u>[Plaintiff] has made numerous complaints to her supervisor</u> and he has been told to leave her alone <u>but the</u>

behavior has continued."

23.     On or about Friday, April 8, 2016, Plaintiff was told by Police Detective Hughs (first name unknown) that *Defendant instructed police not to investigate* Plaintiff's aforesaid complaint with the department about sexual harassment in the workplace.[3]

24.     On or about Monday, April 18, 2016 (the next day Plaintiff worked after being told Defendant instructed Police to not investigate Plaintiff's complaint of sexual harassment,[4] described *supra*), Plaintiff had a meeting with Ms. Manzella and Jean O'Rourke (Deputy Commissioner), during which:

a.  Ms. Manzella provided Plaintiff *for the first time* with Defendant's "official" sexual harassment form to complete, purportedly for Defendant to finally start a "formal" investigation, despite Plaintiff's numerous complaints (verbal and in writing) of sexual harassment dating back over a year (including to Manzella), described *supra*; and

b.  Plaintiff was told to bring in her completed sexual harassment form/paperwork on Wednesday (April 20, 2016) because Tuesday (the next day) was Election Day.

25.     On or about Tuesday, April 19, 2016, Plaintiff worked for Defendant for approximately ten (10) hours but was given no breaks or lunch, which was unusual (even for an Election Day).

26.     On or about Wednesday, April 20, 2016, *before Plaintiff arrived to work* (or had a chance to submit Defendant's "official" harassment form, described *supra*), **Plaintiff was**

---

[3] Defendant apparently told the Police not to answer because Defendant would "handle it" in-house as it occurred, which was Defendant's policy (as alleged to the Police).

[4] The week of April 11 through April 15, 2016, Plaintiff used existing vacation time and did not go to work. Therefore, April 18, 2016, was Plaintiff's next workday after hearing from Suffolk County Police that they were not investigating Plaintiff's sexual harassment complaint at the direction of Defendant (described *supra*).

**terminated for no apparent reason**.

27.    Plaintiff's termination (described *supra*), was blatantly discriminatory and in retaliation for her complaints of ongoing sexual harassment, considering:

    a.  Plaintiff was terminated in a telephone call from Mr. Lalota (via his cellphone), who simply stated that Plaintiff was terminated effective immediately and that Defendant did not have to provide a reason as to why;

    b.  Plaintiff had no record of disciplinary history and had not been informed of any concerns with her work performance;

    c.  On or about April 23, 2016, Plaintiff received a letter from Defendant memorializing her aforesaid termination, again without any alleged reason or cause;

    d.  In March of 2017, Defendant submitted a Position Statement to the EEOC in conjunction with this matter (sometimes referred to as an "Answer"), yet Defendant *still* has not provided any non-discriminatory reason for Plaintiff's termination, as there simply was not one; and

    e.  Plaintiff had *repeatedly* complained of on-going sexual harassment, both informally and in writing (described *supra*), including to Ms. Manzella on multiple occasions (described *supra*), yet not until after Defendant was informed that Plaintiff had actually complained to Police of the workplace sexual harassment (as she was instructed, described *supra*), was Plaintiff given Defendant's "official" sexual harassment form by Ms. Manzella (supposedly to initiate a proper investigation/resolution), only to be terminated for **no reason** two days later before Plaintiff even had a chance to submit it.

28.     Plaintiff therefore believes and avers that she was subjected to a hostile work environment and terminated due to her sex and/or her complaints of sexual harassment.

**Count I**
**Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Gender Discrimination; [2]Retaliation & [3] Hostile Work Environment)**

29.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30.     Plaintiff was subjected to a hostile work environment at Defendant by <u>repeatedly</u> being victim of sexual comments and gestures in the workplace due to her sex (described *supra*).

31.     Plaintiff complained to Defendant's management on several occasions, both verbally and in writing, of the ongoing sexual harassment for over a year.

32.     Defendant never properly investigated nor resolved Plaintiff's complaints of sexual harassment, despite being informed of it by Plaintiff on multiple occasions.

33.     Defendant's management instead met Plaintiff's complaints of sexual harassment with hostility (described more fully *supra*), and allowed Plaintiff to continue to be sexually harassed, and on some occasions *even encouraged* Plaintiff's sexual harasser by trying to place him in the same room as her (for no discernible or legitimate work purpose).

34.     Plaintiff contacted both the EEOC and Suffolk County Police to complain about the sexual harassment she was being subjected to at Defendant; during Plaintiff's employment Defendant became aware of Plaintiff's complaints to both (described *supra*).

35.     Plaintiff was terminated <u>for no discernible reason</u>: [1] less than three weeks after she contacted the police to complain about workplace sexual harassment and prompt an investigation; [2] less than two weeks after the police told Plaintiff that Defendant instructed them not to investigate Plaintiff's complaint of sexual harassment; and [3] <u>less than two days</u>

after being provided Defendant's "official" sexual harassment form for the first time, Plaintiff was terminated via phone before she was even able to submit the completed form.

36.     The discriminatory and retaliatory treatment that Plaintiff was subjected to (as discussed *supra*) was both severe and pervasive and took place on a consistent basis, over years.

37.     These actions as aforesaid constitute violations of Title VII.

## COUNT II
### Violations of the Americans with Disabilities Act, as amended ("ADA")
([1] Hostile Work Environment & [2] Retaliation)

38.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39.     Plaintiff has suffered from qualifying health conditions under the ADA (as amended), because she has a history of brain aneurism(s) and continues to receive treatment for same.

40.     Plaintiff's history of brain aneurysm(s) was known in Defendant's workplace and to Defendant's management.

41.     In or about March of 2015, Mr. O'Hare approached Plaintiff and stated "you are the way you are because the plate in your head moved" (which Plaintiff took to refer to her known history of brain aneurism(s)).

42.     Plaintiff specifically complained of this incident to Defendant's management, including in a September 29, 2015 written complaint (wherein Plaintiff also complained of sexual harassment, described *supra*).

43.     However, Defendant's management failed to properly resolve Plaintiff's complaints of disability-related harassment (as well as Plaintiff's complaints of sexual

harassment), instead subjecting Plaintiff to increased hostility and animosity (described *supra*), up through and including Plaintiff's termination.

44.     Plaintiff therefore believes and therefore avers that she was subjected to a hostile work environment and later terminated because of her complaints of disability-related harassment (as well as her complaints of sexual harassment).

45.     These actions as aforesaid constitute violations of the ADA, as amended.

**COUNT III**
**New York State Human Rights Law ("HRL")**
**([([1] Gender Discrimination; [2]Retaliation; & [3] Hostile Work Environment)**

46.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count I and Count II, as they constitute additional violations of the HRL.

48.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment and later terminated due to her sex and/or her complaints of discrimination (sexual and disability harassment).

49.     These actions constitute violations of the HRL.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay

increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

      C.     Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

      D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

      E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law;

      F.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable law; and

      G.     Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:    */s/ Adam C. Lease*
Adam C. Lease, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
*Attorneys for Plaintiff*

Dated: July 28, 2017